UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY DONELL ROBINSON,<br><br>               Petitioner,<br><br>    v.<br><br>JAMES YATES,<br><br>               Respondent. | Case No. SACV 06-1055 DDP(JC)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Dean D. Pregerson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I. SUMMARY

On November 3, 2006 ("petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254. Petitioner asserts: (1) petitioner's sentence constitutes cruel and unusual punishment; and (2) his counsel in the underlying state case was ineffective in multiple respects.[1]

---

[1] Although the Petition originally contained two additional unexhausted claims enumerated as grounds one and two, the District Judge dismissed such claims on August 27, 2008. (Docket No. 22).

1  On February 22, 2007, respondent filed an Answer and a supporting
2  memorandum ("Answer").² Petitioner did not file a Traverse.
3  For the reasons stated below, the Petition should be denied, and this action
4  should be dismissed with prejudice.

## II. PROCEDURAL HISTORY

On February 25, 2005, the District Attorney of Orange County filed an information charging petitioner with four counts of robbery (counts 1-4), one count of dissuading a witness (count 5), and four counts of kidnaping to commit robbery (counts 6-9). (CT 112-15). The information further alleged that petitioner had suffered two prior convictions which qualified as "strikes" under California's Three Strikes Law (California Penal Code sections 1170.12(a) through (d) and 667(b) through (i)): (1) a conspiracy to commit robbery conviction in San Diego County ("Conspiracy Strike"); and (2) an attempted robbery conviction in San Diego County ("Attempt Strike"). (CT 114). The information also alleged as to the prior conspiracy to commit robbery conviction, that it constituted a prior serious felony enhancement (California Penal Code section 667(a)) ("Serious Felony Enhancement") and that petitioner had served a prior prison term in connection therewith (California Penal Code section 667.5(b)) ("Prior Prison Enhancement"). (CT 114-15).

On April 18, 2005, petitioner pleaded guilty in Orange County Superior Court ("OCSC") to four counts of second degree robbery (counts 1-4) and one count of dissuading a witness from reporting a crime (count 5). (CT 145-53). Petitioner also admitted that he had suffered the prior conspiracy to commit robbery and attempted robbery convictions that were the predicates for the Conspiracy Strike, the Attempt Strike and the Serious Felony Enhancement. (CT 145-46, 148; RT 12-15).

---

²Respondent concurrently lodged multiple documents in support of the Answer ("Lodged Doc.") including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

The trial court sentenced petitioner to a total of 20 years and 4 months in state prison. In accordance with the parties' agreement, the trial ordered the Attempted Robbery Strike stricken for purposes of sentencing. (CT 145, 149; RT 17). The trial court also struck the Prior Prison Term Enhancement allegation and dismissed the remaining counts. (CT 148; RT 17, 19).

On May 26, 2006, the California Court of Appeal affirmed the judgment. (Lodged Doc. 5). On August 30, 2006, the California Supreme Court denied review. (Lodged Doc. 6).

### III. FACTS

#### A. Preliminary Hearing

On February 16, 2005, the preliminary hearing in the underlying state action was held. (CT 1-111). The prosecution called two witnesses – City of Brea police officers Christopher Haddad and Robert Zeeb. The officers testified to the following:

On June 25, 2004, at about 1:48 a.m., Officer Haddad was on duty and responded to an El Torito restaurant in Yorba Linda, in Orange County. (CT 13). He spoke with multiple witnesses at that scene who told him that they had been robbed, including El Torito manager Joe Saenz and employees Maria Vazquez, Owen Pearson, and Laura Bere. (CT 13, 16-17, 19, 28, 34, 51). More specifically, the witnesses told Officer Haddad the following: Saenz went to the rear of the El Torito to check to see if Pearson had taken out the trash. (CT 17). He heard something behind him. He looked back and saw petitioner armed with a handgun. (CT 17, 19). Petitioner pointed the gun towards Saenz, ordered him into the office, and forced him to open up the safe, pointing the gun at his back. (CT 17, 25-26). Meanwhile, petitioner's co-defendant Martin Ringgold pointed a gun at Pearson who taking the trash out of the bathroom. (CT 35-37). Ringgold held a gun to Pearson's head, grabbed him by the neck and forced him to the office. (CT 37-38). Ringgold saw Vazquez, told her to give him her money, and forced

Vazquez and Pearson into the office. (CT 17, 25, 37-38). The robbers took the money. (CT 17). Saenz gave them a bag to put the money into. (CT 20). The robbers then locked the employees into the office after ripping out some of the phone lines. (CT 17, 34). After the robbers left, Saenz tried the phones, found that one of them still worked, and called 911. (CT 34).

At the time of the robbery, Officer Zeeb was on duty about half a mile from the El Torito when he heard a broadcast about the robbery. (CT 82). He drove to the vicinity of the restaurant and, about a minute after the broadcast had occurred, saw a vehicle exiting the access road for an industrial complex in which the restaurant was located. (CT 84). No other vehicles were on the road at the time. (CT 84). The vehicle made an illegal u-turn. (CT 85). At that point, Officer Zeeb began to follow the vehicle, not knowing if it was the suspect vehicle or just a motorist who had made an illegal u-turn. (CT 85). He pulled the vehicle over on a traffic stop. (CT 85). Although Officer Zeeb initially thought there was just one occupant of the vehicle, as he approached, he noticed a second person crouched down in the front passenger seat. (CT 86). The driver was petitioner's co-defendant, Ringgold. (CT 86-87). Petitioner was the passenger. (CT 86-87). Officer Zeeb returned to his vehicle and put out a broadcast that he had a possible suspect vehicle with suspects that matched the description of the subjects leaving the restaurant. (CT 87).

Officer Zeeb saw several items in the vehicle, including a large opaque plastic trash bag on the floorboard of the front passenger vehicle which was found to contain a large amount of money and deposit slips and paperwork for the El Torito, and a cloth coin bag containing a large amount of currency and coinage in it on the floorboard of the rear passenger seat kind of stuffed underneath the front passenger seat. (CT 87-88).

Officer Haddad took Saenz to the location where Office Zeeb had detained petitioner and Ringgold to do an in-field show up. (CT 14). Saenz identified both

4

1  petitioner and Ringgold as being involved in the robbery.  (CT 15).  Saenz stated
2  that he was 100% sure that petitioner was involved in the robbery.  (CT 15).  As
3  Officer Haddad and Saenz drove away from the location, Saenz turned around,
4  looked into the suspect vehicle, and without prompting, stated that a bag inside the
5  vehicle was one that had been taken in the robbery where the money had been
6  placed.  (CT 16).

### B. Plea and Sentencing

On April 18, 2005, petitioner appeared in state court for plea and sentencing.  (CT 148-50; RT 1-19).  As further detailed below, petitioner pleaded guilty to four robbery counts and one dissuading witness count and admitted that he had suffered the two alleged prior convictions in exchange for an agreement that the Attempted Robbery Strike be stricken and that petitioner receive a 21-year sentence – a sentence slightly higher than that actually imposed by the trial court.

At the beginning of the hearing, the trial court referenced the documents before it which reflected that petitioner wished to change his previously entered plea of not guilty to a plea of guilty.  (RT 5).  The trial court proceeded to question petitioner regarding his contemplated pleas.  In response to the trial court's individual questions, petitioner expressly affirmed:  (i) the maximum possible sentence without striking the strikes, *i.e.*, the maximum that he could be sentenced to after a trial, was 131 years to life; (ii) the court's "indicated sentence" was 21 years in state prison; (iii) other than that, no promises had been made to get him to plead guilty; (iv) he had initialed and signed a three-page guilty plea/admission of prior convictions and prison form;[3] (v) he understood that he had the following

---

[3]The guilty plea/admission of prior convictions and prior prison terms forms, which petitioner signed under penalty of perjury, reflect, *inter alia*, that (i) petitioner understood that he was pleading guilty to four counts of violating California Penal Code section 211 (second degree robbery) and one count of violating California Penal Code section 136.1(b)(1) (dissuading a witness) and that he was admitting that he had been convicted of a violation of California Penal
(continued...)

5

constitutional rights and that by pleading guilty and admitting the prior convictions he was giving up the following rights: (a) to have a speedy and public trial by jury, including a right to a jury trial on the existence of his prior convictions; (b) to confront and cross-examine witnesses; (c) to call any witnesses on his own behalf, to present a defense and subpoena witnesses free of charge; (d) to testify and not to testify; (e) to be represented by a lawyer at all stages of the proceedings, even if he could not afford one; (vi) he understood a variety of potential collateral consequences of the plea and conviction; and (vii) he had an opportunity to go over all the charges, the facts, the possible defenses and consequences of his pleas and admissions with his lawyer (RT 6-15).

Petitioner then expressly admitted the following facts which established a factual basis for the plea:

///

///

---

[3](...continued)
Code sections 182-211 (conspiracy to commit robbery) and a violation of California Penal Code sections 664-211 (attempted robbery), each of which would double his sentence, and the former of which would also add five years to his sentence; (ii) petitioner understood that he would receive a sentence of no more than 21 years; (iii) petitioner understood and waived his rights (a) to trial by jury, (b) to confront and cross-examine witnesses against him, (c) to testify on his own behalf, (d) to remain silent, and (e) to call witnesses to testify on his behalf and to use the assistance of processes of the court to subpoena witnesses to testify; (iv) petitioner had discussed the charges, the facts and the possible defenses with his attorney; (v) his plea was given freely and voluntarily with full understanding of all the matters set forth; (vi) no one had made any threats, used any force, or made any promises except those set forth in the form, to convince him to plead guilty; (vii) he had been advised by his attorney that he would be sentenced to 21 years and that one strike would be stricken; and (viii) he had personally discussed the foregoing items with his attorney, understood each and everyone of the rights outlined, and waived such rights in order to enter his plea to the charges. (CT 145-47). The forms also bear petitioner's attorney's signature affirming that she: (i) explained each of the above rights to petitioner; (ii) explored the facts with him; (iii) studied his possible defenses to the charges; (iv) concurred in petitioner's decision to waive his rights and to enter the pleas/make the admissions; and (v) affirmed that no promises of a particular sentence or sentence recommendation had been made to petitioner which was not fully disclosed on the form. (CT 146-47).

> On June 25, 2004, in Orange County [he] willfully and unlawfully by means of force and fear took the personal property against the will and from the person of Joseph Saenz, Owen Pearson, Maria Vasquez and Laura Bere. [He] then aided and abetted Martin Ringgold to pull the phone lines, thereby preventing these victims from making a report to law enforcement.

(RT 12). Petitioner then pleaded guilty to the five counts in issue. (RT 12-13). He further admitted that he had been convicted of conspiracy to commit robbery and attempted robbery. (RT 15). Petitioner's counsel joined in the pleas and the waiver of constitutional rights. (RT 16).

Before accepting the pleas and admissions, the trial court confirmed with petitioner that he wished the court to accept his plea of guilty as to each of the offenses and his admission of the prior convictions. (RT 16). The trial court then found that there was a factual basis for the plea and a knowing and intelligent voluntary waiver of petitioner's constitutional rights and accepted the pleas and admissions. (RT 16).

The trial court immediately proceeded to sentencing. (RT 16). Petitioner's counsel waived formal arraignment and time for sentencing and affirmed that there was no legal cause why sentence should not then be imposed. (RT 16-17). In accordance with the parties' agreement, the trial ordered the Attempted Robbery Strike stricken for purposes of sentencing. (CT 145, 149; RT 17). Although the parties had agreed to a sentence of 21 years in state prison, the trial court, without objection, actually imposed a lesser sentence of 20 years and 4 months, what the trial court termed a "windfall" to petitioner, because the parties had made a miscalculation which the court accounted for by imposing a lesser sentence. (RT 17-18). The sentence imposed consisted of: (1) as to count 1, an upper term of 5 years doubled to 10 years due to the strike; (2) as to each of counts 2 and 3, one third of the middle term (1 year each; 2 years total), doubled due to the strike (2

years each; 4 years total) consecutive; (3) as to count 4, a concurrent term of 4 years; (4) as to count 5, one third the middle term (8 months ), doubled to 16 months due to the strike, consecutive; and (5) a consecutive 5-year term based upon the Serious Felony Enhancement.  (CT 149-50, 152; RT 17-19).  The trial court then ordered stricken the Prior Prison Term Enhancement allegation and dismissed the remaining counts.  (CT 148; RT 17, 19).

On May 19, 2005, the trial court denied petitioner a certificate of probable cause.[4]  (CT 157).

### C.    Direct Appeal

On or about December 5, 2005, petitioner's appellate counsel filed a brief pursuant to People v. Wende, 25 Cal. 3d 436 (1979), stating she had been unable locate appellate issues which benefit petitioner and reciting the law which provides for the Court of Appeal to review the entire record to determine whether it reveals any issues which would, if resolved favorably to the petitioner, result in reversal or modification of the judgment.  (Lodged Doc. 3 at 6, 8).  The Court of Appeal afforded petitioner an opportunity to file written argument on his own behalf.  (Lodged Doc. 5 at 2).

On or about January 1, 2006, petitioner filed a Supplemental Brief in the Court of Appeal in which he argued, *inter alia*, that the facts did not support the four robbery counts and that his trial counsel was ineffective because she persuaded him to plead guilty to all four counts and relied on an erroneous copy of his rap sheet.  (Lodged Doc. 4; Lodged Doc. 5 at 2).  On May 26, 2006, the Court of Appeal affirmed the judgment in a reasoned decision.  (Lodged Doc. 5).  The Court of Appeal noted that petitioner essentially challenged the validity of his plea, and that because the court had denied his request for a certificate of probable cause, his arguments were not cognizable on appeal.  (Lodged Doc. 5 at 2).  The

---

[4] A certificate of probable cause is a necessary predicate under state law to filing an appeal after entering a plea.  See Cal. Rules of Court 8.304(b).

Court of Appeal further noted that it had independently reviewed the record and, based on that review, concluded that no reasonably arguable legal or factual issues existed, including issues of ineffective assistance of counsel. (Lodged Doc. 5 at 2).

On August 30, 2006, the California Supreme Court denied review without comment or citation. (Lodged Doc. 7).

### D. Federal Petitions

As noted above, on November 22, 2006 petitioner filed the Petition in the instant action challenging the judgment in the underlying OCSC case on the grounds that petitioner's sentence constitutes cruel and unusual punishment and his counsel was ineffective.

Petitioner also has pending in this court, a separate federal habeas action in the case entitled Jeffrey D. Robinson v. James A. Yates, No. EDCV 08-985 DDP(JC) ("2008 Federal Action" or "2008 Federal Petition"). This court takes judicial notice of the court file in the 2008 Federal Action, including the Clerk's Transcript ("2008 Federal Action CT") and Reporter's Transcript ("2008 Federal Action RT"). See United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (court may take judicial notice of its own records in other cases). In the 2008 Federal Action, petitioner challenges a 2006 conviction in the Riverside County Superior Court following petitioner's guilty plea to one count of robbery, his admission to a personal gun use enhancement and his admissions that he had previously been convicted in San Diego County of, and had served prior prison terms for conspiracy to commit robbery (a strike) and second degree vehicular burglary. (2008 Federal Petition; 2008 Federal Action CT 143-48, 170-74; 2008 Federal Action RT 7-24, 46).[5]

---

[5] The records of petitioner's plea and sentencing in the underlying case challenged in the 2008 Federal Action reflect that the "969(b) packet" for the San Diego County conspiracy to commit robbery conviction was requested and made available to petitioner. (2008 Federal Action RT 15, 23-24).

## IV. STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[6] However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

"[C]learly established Federal law" under section 2254(d)(1) is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). In the absence of a Supreme Court decision that "squarely addresses the issue" in the case before the state court, Wright v. Van Patten ("Van Patten"), 552 U.S. 120, 125 (2008), or establishes an applicable general principle that "clearly extend[s]" to the case before a federal habeas court to the extent required by the Supreme Court in its recent decisions, Van Patten, 552 U.S. at 123; see also Panetti v. Quarterman, 551 U.S. 930, 953 (2007); Carey v. Musladin ("Musladin"), 549 U.S. 70, 76 (2006), a federal habeas court cannot conclude that a state court's

---

[6]The California Supreme Court's denial of review without comment generally constitutes an adjudication on the merits of any federal claims, thereby subjecting such claims to review in federal habeas proceedings. Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992), cert. denied, 510 U.S. 887 (1993).

adjudication of that issue resulted in a decision contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Moses v. Payne, 555 F.3d 742, 760 (9th Cir. 2009) (citing Van Patten, 552 U.S. at 126).

  Ninth Circuit precedent may be persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law, and may also help determine what law is clearly established.  Sims v. Rowland, 414 F.3d 1148, 1151 (9th Cir.), cert. denied, 546 U.S. 1066 (2005) (citations and quotation marks omitted).  However, in light of Van Patten and Musladin, circuit law may not be used to fill open questions in the Supreme Court's holdings for purposes of federal habeas analysis.  Moses, 555 F.3d at 760 (citing Musladin, 549 U.S. at 76 and Crater v. Galaza, 491 F.3d 1119, 1126 & n.8 (9th Cir. 2007) (explaining that, in Musladin, the Supreme Court "discussed and accepted" the principle that § 2254(d)(1) imposes "limits on the relevance of circuit precedent"), cert. denied, 128 S. Ct. 2961 (2008)).

  A state court decision is "contrary to" clearly established federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision of the Supreme Court but reaches a different result.  See Early, 537 U.S. at 8 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

  Under the "unreasonable application" prong of section 2254(d)(1), a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  Williams v. Taylor, 529 U.S. at 413.

  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous."  Wiggins v. Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state court's application must have been 'objectively unreasonable.'"  Id. at 520-21 (citation omitted); see also Clark v. Murphy, 331

F.3d 1062, 1068 (9th Cir.) (under "unreasonable application" clause, federal habeas court may not issue writ simply because it concludes in its independent judgment that relevant state court decision applied clearly established law erroneously or incorrectly; rather, application must be objectively unreasonable), cert. denied, 540 U.S. 968 (2003). The habeas petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

In applying these standards, federal courts look to the last reasoned state court decision. See Davis v. Grigas, 443 F.3d 1155, 1158 (9th Cir. 2006) (citation and quotations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); see also Gill v. Ayers, 342 F.3d 911, 917 n.5 (9th Cir. 2003) (federal courts "look through" unexplained rulings of higher state courts to the last reasoned decision). However, to the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and consequently, whether the state court's decision was objectively unreasonable. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

When it is clear, however, that the state court has not decided an issue, review of such issue is *de novo*. Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

## V. DISCUSSION[7]

Petitioner claims he is entitled to federal habeas relief because: (1) his sentence constitutes cruel and unusual punishment; and (2) his counsel was

---

[7]The court has read, considered and rejected on the merits all of petitioner's contentions. The court discusses petitioner's principal contentions herein.

12

ineffective in multiple respects. Petitioner is not entitled to habeas relief on any of his claims.

### A. Petitioner's Claim That His Sentence Amounts to Cruel and Unusual Punishment Does Not Merit Habeas Relief

Petitioner argues that his sentence constitutes cruel and unusual under the Eighth Amendment. (Petition at 6a). As there is no reasoned state decision addressing this claim, this court has conducted an independent review of the record to assess whether the California Supreme Court's rejection of this claim was objectively unreasonable. Petitioner is not entitled to habeas relief on this claim.

#### 1. Pertinent Law

The Eighth Amendment forbids the imposition of "cruel and unusual punishments." United States Constitution, Amend. VIII. While the United States Supreme Court's decisions in Rummel v. Estelle, 445 U.S. 263 (1970) and Solem v. Helm, 463 U.S. 277 (1983), assist courts in assessing whether a given sentence constitutes cruel and unusual punishment, on habeas review the only clearly established law is that "[a] gross disproportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72 (2003).

"The threshold determination in the eighth amendment proportionality analysis is whether [petitioner's] sentence was one of the rare cases in which a . . . comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." United States v. Bland, 961 F.2d 123, 129 (9th Cir.), cert. denied, 506 U.S. 858 (1992) (citations and quotations omitted); see Lockyer, 538 U.S. at 73 (gross proportionality principle "applicable only in the 'exceedingly rare' and 'extreme' case") (citations omitted); Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) ("The Eighth Amendment does not require strict proportionality between crime and sentence"); see also Gonzalez v. Duncan, 551 F.3d 875, 883 (9th Cir. 2008) (court must assess whether

a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality); Cocio v. Bramlett, 872 F.2d 889, 892 (9th Cir. 1989) ("we are required to defer to the power of a state legislature to determine the appropriate punishment for violation of its laws based on principles of federalism, unless we are confronted with a rare case of a grossly disproportionate sentence").

In determining whether to infer gross disproportionality, a court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and his criminal history. See Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004).

### 2. Analysis

Petitioner fails to demonstrate that his is one of the exceedingly rare cases in which a sentence raises an inference of gross disproportionality when compared to the gravity of the crime and his criminal history. Rather, this court concludes that no Eighth Amendment violation occurred in this case.

As noted above, prior to committing the offenses on which he was convicted in the instant case, petitioner had been convicted of at least three felonies – conspiracy to commit robbery, attempted robbery, and second degree vehicular robbery. Petitioner was on probation or parole at the time he pleaded guilty. (RT 11). The instant offenses involved at least four victims who were held at what appeared to be gunpoint, and robbed in the early hours of the morning. On the facts of this case, a 20 year, four-month sentence – a sentence which was less than the one to which petitioner agreed at the time of his plea – does not violate the Constitution's prohibition against cruel and unusual punishment. Compare Lockyer v. Andrade, 538 U.S. at 73-75  (rejecting Eighth Amendment challenge to 50-years-to-life sentence under California's Three Strikes Law for two counts of petty theft with a prior misdemeanor conviction, given the petitioner's extensive criminal history including three residential burglary convictions); Ewing v.

California, 538 U.S. 11, 28-30 (2003) (same for 25-years-to-life sentence for third strike conviction for shoplifting, given petitioner's 16-year criminal history including numerous misdemeanor and felony convictions); Hutto v. Davis, 454 U.S. 370, 374-75 (1982) (same for 40-year sentence for possession and distribution of nine ounces of marijuana); Harmelin v. Michigan, 501 U.S. 957, 1005 (1991) (same for mandatory life sentence for first offense of possession of 672 grams of cocaine); Solem v. Helm, 463 U.S. at 297-303 (finding life sentence without the possibility of parole for uttering a no account check for $100 for defendant who had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, and one prior conviction for driving while intoxicated was significantly disproportionate, violating the Eighth Amendment); Rummel v. Estelle, 455 U.S. at 285 (rejecting Eighth Amendment challenge to mandatory life sentence with possibility of parole for obtaining $120.75 under false pretenses, where defendant had prior convictions for fraudulent use of a credit card and passing a forged check).

The state courts' rejection of petitioner's Eighth Amendment claim was not contrary to, or an objectively unreasonable application of, clearly established federal law, and did not constitute an unreasonable determination of the facts in light of the evidence presented. Accordingly, petitioner is not entitled to habeas relief on this claim.

    **B.**    **Petitioner's Claim of Ineffective Assistance of Trial Counsel Does Not Merit Habeas Relief**

Petitioner contends that his trial counsel was ineffective in (1) having petitioner admit to a prior conviction that petitioner did not suffer; (2) failing to research the validity of the prior, without which petitioner could not have knowingly and intelligently waived his rights regarding the same; and (3) failing to argue that the sentence imposed constituted cruel and unusual punishment. (Petition at 6b). Petitioner contends that if his counsel had advised petitioner that

there was a basis to challenge the validity of his prior or that the prior may have been or was in fact invalid, petitioner would not have pleaded guilty. (Petition at 6b). As there is no reasoned state decision addressing this claim, this court has conducted an independent review of the record to assess whether the California Supreme Court's rejection of this claim was objectively unreasonable. Petitioner's claim lacks merit and does not warrant habeas relief.[8]

### 1. Applicable Law

In order to show that counsel was ineffective, a petitioner must demonstrate that (1) defense counsel's representation "fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In a guilty plea case, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### 2. Analysis

Petitioner contends that his trial counsel was ineffective in (1) having petitioner admit to a prior conviction that petitioner did not suffer, presumably the San Diego County conspiracy to commit robbery conviction; (2) failing to

---

[8]Although respondent addresses this claim on the merits (Answer at 9-10), he also argues that this claim is procedurally barred. (Answer at 7-8). In the interest of judicial economy, this court declines to consider the possible procedural bar and instead addresses the merits of the claim. See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar."); Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"), cert. denied, 528 U.S. 846 (1999).

research the validity of the prior, without which petitioner could not have knowingly and intelligently waive his rights regarding the same; and (3) failing to argue that the sentence imposed constituted cruel and unusual punishment. (Petition at 6b). Petitioner's claims do not warrant habeas relief.

First, this court rejects petitioner's contention that his counsel was ineffective in allowing petitioner to admit to a conviction which petitioner did not suffer. As noted above, petitioner swore under penalty of perjury that he had been convicted of the conspiracy to commit robbery conviction. Petitioner's solemn declaration in open court carries a strong presumption of verity. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Petitioner has not overcome such presumption. Indeed, in the 2006 case challenged in the 2008 Federal Action, petitioner again admitted that he had suffered a conspiracy to commit robbery conviction in San Diego County.

Second, petitioner fails to demonstrate that counsel was ineffective in counsel's investigation of petitioner's prior conviction. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Courts assess the reasonableness of an attorney's decisions in light of the circumstances of a particular case, but begin with the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 691. Here, petitioner speculates that his counsel did not investigate whether the conspiracy to commit robbery conviction was a valid strike but the record reflects the contrary. Petitioner's counsel affirmed on the admission of prior convictions and prior prison terms form that she *had* studied petitioner's possible defenses to the charges. (CT 147) (emphasis added). Such counsel's representation is presumed to be true. See Blackledge, 431 U.S. at 73-74 (representations of defendant, his lawyer, and prosecutor during plea hearing constitute formidable barrier in any subsequent collateral proceedings). Moreover, even assuming

counsel was deficient in not more thoroughly investigating the matter, petitioner cannot show prejudice. As noted above, although petitioner complains that his counsel in the instant case did not obtain the "969(b) packet" substantiating the fact that petitioner suffered such prior conviction, the records of petitioner's plea and sentencing in the 2006 case challenged in the 2008 Federal Action reflect that the 969(b) packet for the San Diego County conspiracy to commit robbery conviction was requested and made available to petitioner in that case and reflected that petitioner had suffered such conviction, as petitioner admitted. (2008 Federal Action RT 15, 23-24). In light of the foregoing facts, petitioner fails to demonstrate that his counsel was ineffective in this respect.

Finally, this court rejects petitioner's contention that his counsel was ineffective in failing to argue that petitioner's sentence constituted cruel and unusual punishment. As noted about, this claim lacks merit. Petitioner's counsel cannot be deemed ineffective for failing to make it. "Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel." James v. Borg, 24 F.3d 20, 27 (9th Cir.), cert. denied, 513 U.S. 935 (1994).

## VI. RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: January 8, 2010

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE